IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 10, 2015

## RUSLAN EDWARD WOODBRIDGE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 41200834     John H. Gasaway III, Judge**

---

**No. M2014-02033-CCA-R3-PC – Filed August 18, 2015**

---

The Petitioner, Ruslan Edward Woodbridge, appeals the denial of his petition for post-conviction relief for his conviction for rape of a child. The Petitioner previously entered a guilty plea to rape of a child, a Class A felony, and received a sentence of 25 years' confinement. On appeal, he argues that he received ineffective assistance of counsel in relation to his guilty plea and that his plea was unknowing and involuntary. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the Defendant-Appellant, Ruslan Edward Woodbridge.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; John W. Carney, District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On May 16, 2013, the Petitioner entered a plea of guilty to rape of a child and agreed to a mandatory 25-year sentence of confinement, to be served at 100 percent. The Petitioner also entered guilty pleas to six unrelated burglary and theft offenses with agreed sentences to run concurrent to each other and concurrent to the rape of a child sentence for an effective sentence of 25 years' confinement. At the guilty plea hearing, the following factual basis underlying the Petitioner's rape of a child plea was presented:

The [Petitioner] was earlier arrested and placed in jail for some burglary offenses for what would become docket 41200269, the offense for which he's already entered open pleas of guilty for burglary, theft and so on.

While he was in jail, his mother investigated his room and discovered some disturbing things. She discovered both disturbing drawings, some inappropriate computer entries. She discovered that [the Petitioner]'s step sister, whose initials are DW and whose date of birth is June 27, 2001, her underwear was in the [the Petitioner]'s room. This led to several questions by the Defendant's step mother of her daughter, step sister of [the Petitioner]. She made out a written statement which – and I will recite this substantially as she wrote it herself,

> Mommy went to Wal-Mart and left me with [the Petitioner]. We sat down and watched TV. He reached over and he put the hand down the front of my pants and he put a finger inside of me. It hurt but I didn't move because I was scared. Then I went to the bathroom. I didn't tell Mom because . . . I didn't want to get [the Petitioner] in trouble.

When the young girl made that disclosure, she was then given the full forensic investigation, recited that information. She suffered no permanent damage.[1] [The Petitioner] was then questioned and after waiving his right to Counsel, was interviewed in a videotaped interrogation. He admitted to what he did and that he described digitally penetrating his step sister and in fact, part of the evidence that would be presented against him, is a chart that was drawn right there on the page in front of him, in which she pointed out the finger and the depth involved in this child.

The Court may also note that the [the Petitioner] in addition to making confessional statements to the law enforcement officers, information that was corroborated by the young girl involved, has also written letters to the Court expressing his guilt and remorse and letters to the Clerk of the Court expressing his guilt and remorse and asking to be sentenced and asking to be sent on to the Department of Correction[].

---

[1] The State clarified that while the victim suffered no permanent physical damage, she underwent "extreme psychological counseling because of what occurred to her, and the State would view that as damage."

After the factual proffer, counsel for the Petitioner informed the trial court that he had explained to the Petitioner that the rape of a child offense requires a sentence of 25 years and that "it must be served without the possibility of parole . . . [,] earning behavior, program, trustee, or other credits." He also informed the Petitioner that, upon his release, he would be subject to community supervision and the sex offender registry for life.

The trial court questioned both the State and defense counsel about the agreed-upon sentence of 25 years, and both agreed that because of the date of the offense, this sentence was mandatory. Defense counsel informed the court that the sentencing law changed on January 1, 2012, and the offense occurred on January 5, 2012, meaning that the Defendant was subject to the new sentencing law imposing a mandatory 25-year sentence. The court expressed its concern about proof establishing the date of the offense and questioned the State and defense counsel at length about this issue. The court then ordered the State to provide the Petitioner with a written statement of the factual basis underlying the rape of a child offense and continued the guilty plea hearing to a later date.

At the subsequent guilty plea hearing, defense counsel again presented the court with the factual basis underlying the Petitioner's pleas. Counsel then explained the agreed-upon sentence of 25 years' confinement:

> [W]hile the date is not necessarily an element of the offense, the span is from June 2011 until January 26[, 2012,] which was the time of the [Petitioner's] burglary arrest . . . During that time span only one of two statutes would apply. Under the former statute that applied throughout 2011, rape of a child was a Class A felony. The punishment was fixed at not less than twenty-five for a range one offender; not more than twenty-five. In short, it was a twenty-five year automatic sentence. That [s]tatute changed effective January 1, 2012. At that point, rape of a child, while remaining a Class A felony, became automatically subject to range two punishment; that is, not less than twenty-five, not more than forty even if the defendant was a true range one offender.

Counsel stated that he believed the State's proof would establish that the offense occurred on January 5, 2012, subjecting the Defendant to the new statute for sentencing. Accordingly, the agreed-upon sentence of 25 years was the "guaranteed minimum sentence, the lowest we can possibly go by law."

The trial court then engaged in a dialogue with the Petitioner regarding the offense and his desire to plead guilty. The Petitioner acknowledged the facts as presented in

court and agreed that he "engag[ed] in th[at] conduct." The court explained to the Petitioner his rights and the rights he would be giving up by pleading guilty. The Petitioner indicated that he understood his rights and wished to enter a plea of guilty. The court and the Petitioner then discussed the agreed-upon sentence:

| | |
|---|---|
| COURT: | Do you understand that with this sentence, you are leaving here today to serve a twenty-five year sentence in the State Penitentiary? |
| [PETITIONER]: | Yes sir. |
| COURT: | And that that twenty-five year sentence is a sentence you must serve at one hundred percent? |
| [PETITIONER]: | Yes sir. |
| COURT: | Do you have any questions about that? |
| [PETITIONER]: | Yes. |
| COURT: | First ask [counsel]. |
| [COUNSEL]: | The burglary is swallowed by the big charge[?] |
| COURT: | Everything that I sentenced you here today is to be served concurrently, which means at the same time, so while you are serving the twenty-five years, which is the biggest sentence – the longest sentence, you are getting rid of and serving these smaller sentences as you go. |
| [PETITIONER]: | Okay, thank you. |
| COURT: | Do you understand that? |
| [PETITIONER]: | Yes sir. |

At the time of the plea, the Petitioner was 19 years old. Upon finding the Petitioner competent and his pleas knowing and voluntary, the court accepted the Petitioner's pleas and sentenced him in accordance with the agreement.

On September 4, 2013, the Petitioner filed a pro se petition for post-conviction relief, alleging that he received ineffective assistance of counsel in connection with his guilty pleas and that his pleas were unknowing and involuntary. The Petitioner was subsequently appointed counsel and a hearing on the matter was held on October 9, 2013. At the hearing, the Petitioner, age 21, testified that he was born in Russia and moved to the United States when he was 12. He was adopted by an American family, homeschooled, and completed the 9th grade. He stated that he was "[s]ometimes" fluent in English and explained, "I can speak it and understand it, but sometimes . . . I stumble words and stuff and don't understand some of the words."

The Petitioner recalled meeting with counsel prior to pleading guilty but did not recall whether they discussed the potential plea agreement. He also recalled standing in front of the judge during the guilty plea hearing but insisted that he believed he was entering a plea for a 15-year sentence. He stated, "I was told pleading guilty to fifteen years because I don't want twenty-five. I know my crimes and I know what I did was wrong, but I just wanted to get fifteen years instead of twenty-five." He claimed that he did not realize he was pleading guilty to rape of a child "at first" because no one explained the laws to him. He further claimed that he did not recall talking to the judge about sentence possibilities during the guilty plea hearing and that had he known he was pleading to twenty-five years, he would not have pleaded guilty. He stated that he "want[ed] to plead to a lesser charge" like aggravated battery because he wanted a sentence of fifteen years.

On cross-examination, the Petitioner agreed that he met with counsel prior to pleading guilty and that they discussed his case "in detail." He acknowledged that he confessed to the offenses to which he pleaded guilty, including rape of a child, but claimed that he "didn't understand what was going on[.]" He agreed that counsel never told him that he would receive a sentence of 15 years and when asked what counsel told him, he responded, "Twenty-five years maximum." He stated that during the guilty plea hearing, the judge told him that his charges for burglary and theft would be "like fifteen [years] . . . but after that something went wrong and I got twenty-five years."

Counsel testified that he represented the Petitioner in the instant case and met with him "at least eight times at the jail" and multiple times in court. Counsel discussed each of the Petitioner's cases in detail with him and explained to him the possible sentences. With regard to the rape of a child offense, counsel believed the State had an "extremely strong" case against the Petitioner. He noted that, in addition to other evidence like the testimony of the victim, the Petitioner confessed to the offense, drew a picture depicting the incident, and wrote a letter to the Clerk of the Court confessing to the crime and asking for it to be settled quickly. Counsel recalled that because the statute for rape of a

-5-

child had recently changed, the trial court made the State and defense counsel "go back and double check" the date of the offense and the applicable statute.

Counsel was aware that the Petitioner was born in Russia, but he believed the Petitioner had a "good command" of the English language. He had no difficulty understanding the Petitioner and stated that the Petitioner never expressed any difficulty in understanding the things counsel explained to him. Counsel recalled that he reviewed the discovery packet with the Petitioner and discussed with him the evidence against him. When asked whether he told the Petitioner he could receive a 15-year sentence, counsel responded,

> The only way that that could have come out is depending on the day of the offense, I would have said – there were times that it was [a] fifteen to twenty-five[-year sentence], there were times that it was a twenty-five[-year] fixed [sentence], there were times that it was a twenty-five to forty[-year] mandatory [sentence] and we'll have to find out exactly what the date of the offense is that the State can nail down, and then we find out what [statute] applies.

Counsel stated that because of the date of the offense, the Petitioner was subject to a twenty-five-year mandatory minimum sentence, which he explained to the Petitioner in detail. He recalled that the trial court also explained the sentence to the Petitioner during the guilty plea hearing and it was reduced to writing for the Petitioner to review. Counsel noted that the trial court required the State to produce a written proffer of the factual basis for the plea and that the Petitioner had a copy of this proffer days before entering his guilty plea.

At the conclusion of the hearing, the trial court made oral findings and denied relief. Subsequently, the Petitioner filed a notice to the court that he wished to "waive any pending appellate review of [his] guilty plea length of sentence" and focus solely on "ineffective assistance of counsel on the voluntariness/'understanding' aspect of [his] guilty plea." The post-conviction court entered an order on January 14, 2015, concluding that the Petitioner "made a knowing and voluntary guilty plea" and denied relief.

It is from this order that the Petitioner now timely appeals.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance in connection with his guilty plea for rape of a child and that his plea was involuntary and

unknowing. The State responds that the Petitioner failed to establish either claim. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668,

-7-

687 (1984); <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." <u>Goad v. State</u>, 938 S.W.2d 363, 370 (Tenn. 1996) (citing <u>Strickland</u>, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." <u>Id.</u> at 369 (citing <u>Strickland</u>, 466 U.S. at 688; <u>Baxter</u>, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Id.</u> at 370 (quoting <u>Strickland</u>, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. <u>Serrano v. State</u>, 133 S.W.3d 599, 605 (Tenn. 2004) (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. <u>Lane v. State</u>, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. <u>Id.</u> (citing <u>State v. Mackey</u>, 553 S.W.2d 337, 340 (Tenn. 1977); <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970); <u>Brady v. United States</u>, 397 U.S. 742, 747 (1970); <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" <u>Mackey</u>, 553 S.W.2d at 340; <u>see</u> Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" <u>Lane</u>, 316 S.W.3d at 562 (quoting <u>Grindstaff</u>, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. <u>Id.</u> (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" <u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting <u>Boykin</u>, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

As an initial matter, the Petitioner seemingly argues that counsel provided ineffective assistance in connection with his guilty plea. However, the Petitioner does not allege any errors by counsel or assert that, but for counsel's errors, he would not have pleaded guilty and would have insisted on proceeding to trial. As such, he risks waiver of his ineffective assistance of counsel claims. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also Tenn. R.App. P. 27(a)(7) (A brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."). In any event, upon our review of the record we discern no error by counsel in his representation. The record establishes that counsel met with the Petitioner on numerous occasions prior to his guilty plea hearings during which he and the Petitioner discussed the Petitioner's cases. Counsel reviewed the evidence with the Petitioner and explained to him the possible sentencing ranges for the offenses. As noted by the post-conviction court, "the timing of [the offense] [was] such that [counsel] had to cover, had to explain" the various sentencing ranges that the Petitioner could face. The Petitioner conceded that counsel told him that his sentence was twenty-five years. There is nothing in the record to suggest that counsel misinformed the Petitioner about the agreed-upon sentence. He is not entitled to relief on this issue.

Turning to the Petitioner's claims regarding the voluntariness of his plea, we likewise conclude that the Petitioner is not entitled to relief. In denying relief, the post-conviction court focused on the Petitioner's testimony from the guilty plea hearing, noting that the Petitioner was repeatedly informed that he was being sentenced to 25 years' confinement. In fact, the trial court continued the guilty plea hearing so that counsel and the State could "double check" the offense date and applicable statutes to ensure that the Petitioner understood the agreed-upon sentence and what he could face if he proceeded to trial. At the subsequent guilty plea hearing, counsel explained in open court the possible sentencing ranges depending on the date of the offense and stated unequivocally that the Petitioner was subject to a mandatory minimum sentence of 25

years based on the date of the offense. Likewise, the trial court informed the Petitioner that he was receiving a 25-year sentence to serve at 100 percent at least five times over the course of the two guilty plea hearings. Throughout these hearings, the Petitioner testified that he understood the sentence. A petitioner's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The trial court credited the Petitioner's testimony at his guilty plea hearing over his post-conviction testimony. Nothing in the record dispels the reliability of the Petitioner's guilty plea testimony. Thus, we agree with the post-conviction court that the Petitioner has failed to prove by clear and convincing evidence that his guilty pleas were involuntary and unknowing. The Petitioner is not entitled to relief.

We observe that despite the extensive factual findings underlying the Petitioner's pleas, the judgment sheet reflects the offense date as June 1, 2011. The guilty plea hearing transcripts make clear, however, that all parties agreed that the offense occurred on January 5, 2012. Accordingly, we remand to the trial court for correction of this error.

## CONCLUSION

Based on the foregoing authority and analysis, the judgment of the post-conviction court is affirmed. We remand to the trial court for correction of the judgment sheet to reflect the proper offense date.

_____
CAMILLE R. MCMULLEN, JUDGE